We'll hear the next case, which is Gamero v. Koodo Sushi. Hold on one second, there's a large crowd, apparently not waiting to hear your argument. I won't be offended, Your Honor. Good morning, Your Honors. May it please the Court. My name is Sean Clark of Michael Falace & Associates, and I am counsel for Plaintiff Appellants Israel Gamero, Norberto Mastronzo, and Oscar Sanchez. Your Honors, the District Court's calculation of damages should be reversed and remanded for further consideration because the District Court failed to calculate each plaintiff's regular rate of pay based on each plaintiff's actual pay each week. After trial in this case, the District Court found that defendants willfully violated the FLSA in New York labor law. Did the District Court hold implicitly, if not explicitly, that the regular rate of pay was the minimum wage? I believe implicitly it seems that the Court applied the New York labor law's minimum wage provisions as the regular rate of pay. Why isn't that sufficient? For a few reasons. First is that the Court explicitly noted in its own factual findings that at least one of the plaintiffs made over the New York labor law minimum wage for at least a portion. What was the amount, by the way? What's the New York minimum wage? Is that 7.5? No, that's the FLSA. It varied across the plaintiff's employment. I believe it cited in the brief as to each particular year. I would need to refer to it in order to know how it changed, but it did change, I believe, starting in 2014. Now, the New York labor law… As to the one plaintiff who purportedly made more than the minimum wage, did he put in evidence as to when he got those higher amounts? I believe that the defendant herself testified as to when she theoretically made wage increases. Now, there was testimony, which the Court used. So I read her testimony. I was a little confused. Okay. Because there are parts where she refers to $7.25. There's another part where after the use of a deposition transcript, there's some quibble about $9.00. That goes back to my question. What is it, and what is it that the district court found? Well, part of the issue that we're raising here concerning the court's failure to determine the regular rate of pay for each plaintiff is that the district court did make findings as to what each plaintiff was making per week over the time of their employment, as well as findings concerning how many hours each plaintiff worked in a week. There are federal and state provisions instructing how the regular rate of pay is calculated under those circumstances. It's not uncommon in an FLSA or New York labor law case that it's not explicit from the record what exactly the regular rate of pay was. There are cases where there are improper exemptions, as an example.  The district court found that the defendants had failed to provide New York labor law required wage notices and wage statements, both of which would have notified the plaintiffs of their regular rate of pay. The court found that those had never been issued to any plaintiff in the case. Thus, it's not surprising that one of the steps that a district court needs to make in determining the exact calculation of damages in an FLSA or New York labor law case is determining the regular rate of pay fresh based on the evidence before it. Here, certainly there were disputes of fact concerning What evidence did the plaintiffs present as to what the regular rate of pay was if something different from the minimum wage? Well, there was a dispute in the case concerning what the payments to the plaintiffs were. The plaintiffs testified that they were being paid a salary based on the week. Certainly, they had not received any wage notices or wage statements. Did they say my regular rate of pay was X dollars an hour? They did not, and that's not a requirement. It's not a requirement, but how is a district court to find what the regular rate of pay was if the plaintiffs didn't even proffer the regular rate of pay? Well, there are a few different calculations. Certainly, plaintiff's argument, which we're not appealing overtly in this case, is that if the fact finder found that the plaintiff's testimony was true. There is no nothing other than overt arguments. My apologies, Your Honor. We argued that the New York Labor Law's hospitality order should apply. And what the New York Labor Law's hospitality order instructs is that if a plaintiff is paid in any method other than in an hourly rate, that the payment for that plaintiff should be divided by 40 in order to determine that plaintiff's regular rate of pay. Now, the court took another method. The district court found that the regular rate of pay should be determined based on an hourly rate. Now, typically, the way that it would be determined in that case would be dividing the total amount of remuneration by the total number of hours worked. That's not what we saw here. In fact, what the district court decided to do was to essentially eliminate the step of calculating a plaintiff's regular rate of pay. Instead, it simply put in the New York Labor Law minimum wage, no matter what the plaintiffs had actually been paid, in order to determine the floor of the plaintiff's compensation. Now, you can understand that that would essentially eliminate overtime liability in many situations because of the fact that, as an example, if the straight rate of pay had been something like $15 an hour, if you compare that- There was no proof of what the regular rate of pay was. And I'm not hearing that there was any proof offered of what the regular rate of pay was, other than some vague testimony that the one guy was put at $9 an hour at some point, but without specificity as to when and for how long. Well, specifically, both the New York Labor Law and the FLSA provide for how the regular rate is to be calculated in these kinds of situations. There was no murkiness, or very little murkiness, as to what the total amount of pay each week was, based on the court's factual findings. The district court awarded about $25,000. I mean, what was the amount that you thought, well, what amount do you think is the appropriate award of damages? Well, it depends on a couple of factors. First is whether or not the New York Labor Law hospitality wage order applied. The court decided that it did not, and if it had applied, it would have been something like $400,000 in total damages. That's assuming that the plaintiff's version of the hours worked and pay received was fully credited. So I imagine it would be something lower in light of the court's findings. Nevertheless, even applying the court's findings as to amounts of pay received and as to the number of hours worked, it would have been substantially higher because of additional overtime liability. Now, there's also some side issues here. Certainly, the court didn't address testimony on the record concerning extra pay, and to also address that in the context of defendant's brief. The pay that you refer to, that was to Sanchez and Mestranzo, I think. Yes. Isn't that best understood as discretionary and thus excludable from the regular rate? I disagree based on some of the testimony that we heard in the trial, specifically that it was meant to make the plaintiff work faster and the like. Often that is interpreted as meaning that the bonus is not discretionary. On the other hand, it sort of evokes some of what's problematic about the court's approach because if it was a discretionary bonus, it shouldn't be an offset to the plaintiff's overtime and minimum wage liability. Now, it appears from the court's calculations that it was being treated as an offset to the minimum wage and overtime requirements because she simply compared the New York labor law required wages to what was provided each week, including that extra pay. In either case, that extra pay was treated in an improper fashion by the district court. Just as a matter of interest, is there any reason you didn't file a reply brief? In this particular case? I don't believe that we believe that there were any issues that we needed to address explicitly outside of our oral argument. I will note that we do concede that Rana versus Islam, I believe, does address the liquidated damage arguments that were raised in our initial brief. Thank you. We'll hear from the other side. Good morning, Your Honors. Excuse me. May it please the Court. Thomas Giblin of Latham & Watkins, serving as counsel for defendant Appalese Michelle Koo in Kudu Sushi Court. Latham was appointed by the district court in anticipation of trial below. Your Honors, the task facing the district court was not an easy one. The documentary evidence that was introduced at trial was complicated and it was at times incomplete and plaintiffs introduced virtually no credible evidence of their own. But the court was thorough, conducted at a three-day bench trial, considered over 170 pages worth of post-trial submissions, and issued a detailed and nuanced 62-page opinion, finding partially in favor of plaintiffs. The district court's analysis was thorough and well-reasoned and it did not commit clear error in any respect. A regular rate of A for Mr. Sanchez. So, at times, Your Honor, it was the minimum wage. Actually, in all times, the way the court conducted her analysis, it was the minimum wage. And perhaps it makes sense to set. So $9 was the minimum wage at a certain point? $8.75, I believe, was the minimum wage. What's $9? I understand that maybe it's not a significant difference, but it's a difference. What's $9? What does that represent? Something above minimum wage. So, Your Honor, I think here it's important to understand how the district court found liability. The district court found liability for two reasons. The first reason was where the documentary evidence. You can answer that question when it comes up. My question is, what does $9 represent? Is that above minimum wage? $9 represented what, yes, it was at, So there is no evidence on the record as to when Mr. Sanchez received minimum wage, but there is testimony that he received $9. The most that the minimum wage was at that time was $8.75. 2015. 2015, which, by the way, Your Honor, was also the period where Mr. Sanchez was not working overtime hours. Okay, so is it fair to say that on this record there's some evidence from Mrs. Koo, for example, in her deposition and at trial, that you can quibble about the back and forth, but there's some evidence that he was paid $9 an hour at some point. There is, Your Honor, and the court disregarded that evidence in finding liability. Tell me where Judge Fehler specifically disregarded that evidence. So I believe it was S.P.A. 38. S.P.A. 38, yeah, I believe it's S.P.A. 38. I'm sorry, S.P.A. 39. The court held that, or the court found that she was awarding liability because where there was no documentary evidence to corroborate defendant's other evidence, which was primarily Ms. Koo's testimony, defendants had not rebutted the prima facie case presented by plaintiffs. Therefore, for the weeks in which she found liability based on incomplete records, she, for the weeks on which she disregarded, there were incomplete records, she disregarded that testimony and instead awarded plaintiffs what they testified they had made for that week, which was below minimum wage. Therefore, the regular rate of pay advanced by plaintiffs in their liability testimony fell below minimum wage, and the court then applied minimum wage as required by 778, 29 CFR 778-107. So this had to do with the periods of time when Ms. Koo had or did not have records. That's correct. That is the only period where, that is the only place where that's an issue because the other category of weeks where the court found damages was where defendants' evidence actually showed, because of certain incorrect deductions, that they certainly, that they did receive less than minimum wage. And, of course, there's a finding on the record as well, Your Honor, that Plaintiffs Gamero and Mastronzo received minimum wage as their regular rate of pay, or as their hourly rate, which implies that it was their regular rate of pay under section 29 CFR section 778-110A. And I'll briefly address, Your Honors, plaintiffs' assertion that the proper measure of damages or the proper way to calculate the regular rate of pay is to take the total remuneration and divide by 40. That is an incorrect reading of 29 CFR 778-109, which, by its terms, applies explicitly only to situations in which the plaintiffs were not paid an hourly rate. And that's true of all of the cases in Plaintiff's Brief as well, or at least most of them, including Walling, which was about piecework, Mumbauer v. H.R. Calicott, which is an Eighth Circuit case in which was a weekly rate, Overnight Motor Transportation v. Missell, which was a weekly rate, and O'Brien v. Town of Agawam, which was hourly pay, but it was by negotiated pursuant to a collective bargaining agreement. Now, what plaintiff is basically attempting to do here is having established liability via their prima facie case by testifying that Mr. Sanchez was paid below minimum wage, and, again, this is only Plaintiff Sanchez, Mr. Sanchez now is trying to use the very evidence that the Court disregarded for those weeks so that he can obtain a higher damage rate. That's not what the law requires, and it can't be because it would be completely inconsistent with the Court's underlying finding of liability. Given those considerations, Your Honors, the Court's damages award was well within Anderson's instruction that it is the ability to approximate damages where the evidence is inconsistent or unclear. I'll also briefly address the issue of extra payments. First of all, defendants waived that issue below. It was not raised in their post-trial submissions. It was not raised even in their complaint. And they had a second shot at raising it when they moved to clarify damages, and it was not raised then. There's no manifest injustice here. They were represented by counsel at all times. They received a substantial damages award. There's no reason not to find that argument waived. Regardless, there is no evidence on the record that supports a finding that they were anything but discretionary. Under Section 207e3, discretionary bonuses are excluded where the defendant or the employer controls the fact of the payment, the fact that the payment will be made, and the amount of the payment in her discretion. Here, especially if you look at the actual evidence in the record that was introduced, the payments vary widely in timing, they vary widely in amount, and no evidence on the record suggests that any of the plaintiffs had any sort of agreement or expectation that they would receive a bonus at any time or for any amount. And they're properly excluded under 207e3. And with my opponent having conceded the applicability of Rana v. Islam, unless the Court has any more questions, I'm happy to rest on my brief. Thank you. I'd just like to make a few brief points, Your Honor. First, as to the dividing by 40 that I described, what I described was specifically the provisions of the New York labor laws hospitality wage order, not the CFR, which is what was referenced by defendants just now. So I do want to make that clear and make it clear that that was the argument that we were raising below. Second, we are not disputing the facts that were found by the Court pursuant to the Court's opinion. However, we're really suggesting that to the extent that the District Court found those facts, the calculation of the regular rate needs to conform to them. The Court did make very specific findings as to how much plaintiffs made each week and the hours that they worked. And the underlying calculations of the regular rate do not conform or make sense, honestly, in light of that. Lastly, in terms of waiver... Your adversary, colleague, referenced SPA 38 in connection with Mr. Sanchez. Do you have a response to that? I reviewed SPA 38, and to be candid, I couldn't find the quotes that he was issuing. So I'm not sure if he made a mistake. 39, I'm sorry. 39 into 40 and 41. Yes, I noticed that change. I still didn't completely track what he was saying pursuant to that. I do note that the Court does note that damages, awards to plaintiffs can be approximate. Typically that language is used in the context of cases where there isn't a wealth of evidence concerning the number of hours worked or paid. Well, the Court made findings, however. I don't think that this is one of those cases where, or it may in fact be one of those cases where the District Court decided to extrapolate for certain weeks of pay where there were no records what the plaintiffs were making. Nevertheless, the Court did make those fact determinations. The Court did make fact determinations as to what the plaintiffs were receiving each week. It did make fact determinations to the hours of work that the plaintiffs worked. And to the extent that the Court did make those fact determinations, it should be required to calculate the regular rate of pay pursuant to federal and state law. Lastly, as to the issue of discretionary bonuses, I'll note that the District Court did not at all address this issue. Did you raise this below? Well, we raised it in the context of the plaintiffs saying that they were paid a salary. The only time that this could become an issue... Either in the complaint or at trial for extra pay? We made for minimum wage and overtime liability, which is what this would be. They're saying you never made a demand below, either in the complaint or at trial or at any time for this discretionary extra pay. Is that true or not true? Not true, because the way that this would affect the plaintiffs' cases is that either it needs to be calculated for purposes of the regular rate, in which case it's an overtime claim, or it's considered in the context of an offset. Can you point to something in the record where you made a claim for the extra pay? There was no opportunity for briefing after the court's factual findings.